UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN A RICHARDSON III,

                    Plaintiff,

          v.

MARGARET GILBERT, THERESA
HILLIARD, SHANE EVANS, INDIVIDUAL
MEDICAL STAFF, SCOTT M LIGHT,
JANE AND JOHN DOES 1-6,

                    Defendants.

Case No. C19-5525 BHS-TLF

REPORT AND
RECOMMENDATION

NOTED FOR APRIL 13, 2022

          *Pro se* plaintiff John Richardson III, proceeding in forma pauperis (IFP) in this 42

U.S.C. § 1983 action, alleges violations of his Eighth Amendment rights and state law

claims for medical negligence. Dkt. 14, Plaintiff's Amended Complaint. This matter has

been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v.*

*Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).

          Defendants move for summary judgment. Dkt. 25. Plaintiff did not file a response

to Defendants' motion for summary judgment, and because Plaintiff has not presented

evidence or argumentation to the contrary, Defendants' facts are accepted as

undisputed[1]. For the reasons set forth below, the Court should GRANT Defendants'

---

[1] The Court re-noted Defendants' motion for summary judgment several times, in part due to COVID-19 related lockdowns in the prison facility and potential confusion or misunderstanding relating to the specific date on which Defendants' motion for summary judgment would be considered by the Court. Dkt. 70.

REPORT AND RECOMMENDATION - 1

1  unopposed motion for summary judgment because they have demonstrated that

2  Plaintiff's allegations do not entitle him to relief. Thus, Plaintiff's claims should be

3  dismissed with prejudice.

4                   I.        **FACTUAL AND PROCEDURAL BACKGROUND**

5         Plaintiff was an inmate at Stafford Creek Corrections Center (SCCC). Dkt. 14 at

6  ¶3. Plaintiff was diagnosed with diabetes and was prescribed Metformin, an oral

7  medication, by Defendant Scott Light, a physician assistant at SCCC's medical

8  department. *See* Dkt. 27, Declaration of Scott Light in Support of Defendant's Motion for

9  Summary Judgment , ¶4.

10         On October 7, 2016, SCCC's medical director ordered troponin tests for Plaintiff

11  after he complained of chest pain. *Id.* at ¶5.  Plaintiff was being monitored in the

12  inpatient medical unit. *Id.* The following day, Mr. Light ordered an electrocardiogram and

13  another troponin test, which later came back negative. *Id.* Because the test came back

14  negative and Plaintiff's vital signs, oxygen saturation, respiratory rate and blood

15  pressure were within normal levels, Plaintiff began a daily aspirin regimen and was

16  released back to his unit. *Id.* Plaintiff was instructed to return to the medical unit

17  immediately if he experienced further chest pain. *Id*.; Exhibit B.

18         Plaintiff returned to the medical unit on October 11, 2016, complaining of chest

19  pain and edema. *Id.* at ¶6; Exhibit C. After consulting with the SCCC medical director,

20  Mr. Light sent Plaintiff to the Emergency Room at Grays Harbor Community Hospital. *Id.*

21  At the hospital, it was discovered that Plaintiff had blood clots in his lung -i.e., a

22  pulmonary embolism. *Id.* The hospital staff released Plaintiff back to SCCC after

23  determining that there was no immediate threat warranting hospitalization. *Id.*

24

25

1    Once he returned to SCCC, Plaintiff was admitted to the infirmary and Mr. Light

2  instructed that Plaintiff be given ongoing care, including administering blood thinning

3  injections. *Id.* at ¶7. The following day, Plaintiff requested to be released from the

4  infirmary. *Id.* at ¶8. Before being discharged, Plaintiff expressed concern that the

5  Metformin he was prescribed may have caused his edema. *Id.* Mr. Light agreed to

6  prescribe Plaintiff alternative medication, despite not finding a connection between the

7  Metformin and Plaintiff's edema. *Id.*; Exhibit E.

8    Plaintiff returned to the medical unit on October 20, 2016, for a follow up

9  appointment. *Id.* at ¶9. He informed the medical staff that his symptoms had improved.

10  *Id.* In the meantime, the medical staff continued to assess the possible causes for

11  Plaintiff's pulmonary embolism by conducting an ultrasound and checking Plaintiff's

12  stool for blood. *Id.* at ¶10.

13    On October 20, Plaintiff filed a grievance alleging inadequate medical care by

14  SCCC medical staff in the treatment of his chest pain. *See* Dkt. 28, Declaration of

15  Theresa Hilliard in Support of Defendants' Motion for Summary Judgment, Exhibit A.

16  His grievance was denied; Plaintiff appealed. *Id.* Defendant Theresa Hilliard, SCCC's

17  Health Services Quality Improvement Program Administrator, reviewed Plaintiff's

18  grievance and interviewed him on February 13, 2017. *Id.* During the interview, Plaintiff

19  confirmed that he was seeing a cardiologist and felt that his problems were being

20  addressed. *Id.* He was told to continue working with his provider and to declare an

21  emergency for any future instances of chest pain, rather than waiting to get an

22  appointment. *See* Dkt. 29, Declaration Defendant Margaret Gilbert in Support of

23  Defendants' Motion for Summary Judgment, Exhibit A.

24

25

NOTED FOR APRIL 12, 2022 - 3

1    Plaintiff was sent back to the Grays Harbor Hospital Emergency Room for an

2   evaluation on November 30, 2016, after he complained of chest pain and shortness of

3   breath. Dkt. 27, Declaration of Mr. Light, at ¶ 10. Plaintiff's CT scan was negative for

4   pulmonary embolism. *Id.* In the following months, Plaintiff underwent another pulmonary

5   function test, a CT scan, an echocardiogram, two cardiology visits, and a cardiac stress

6   test. *Id.* The results of all of those tests were normal. *Id.* Plaintiff had two chronic care

7   follow up visits scheduled with Mr. Light on February 2 and April 25, 2017; Plaintiff did

8   not show up to either appointment. *Id.*

9                        **II.    DISCUSSION**

10       **A. Legal Standards**

11           1. <u>Summary Judgment Standard</u>

12       Summary judgment is supported if the materials in the record "show that there is

13   no genuine issue as to any material fact and that the movant is entitled to judgment as a

14   matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a),(c). The moving party

15   bears the initial burden to demonstrate the absence of a genuine dispute of material fact

16   for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute

17   concerning a material fact is presented when there is sufficient evidence for a

18   reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby,*

19   *Inc.,* 477 U.S. 242, 252 (1986). In this context, materiality means the fact is one that is

20   "relevant to an element of a claim or defense and whose existence might affect the

21   outcome of the suit"; thus, materiality is "determined by the substantive law governing

22   the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630

23   (9th Cir. 1987).

24

25

1    A main purpose of summary judgment is to dispose of factually unsupported

2  claims and defenses. *See Celotex Corp*., 477 U.S. at 323-24. Summary judgment must

3  be granted against a party that fails to demonstrate facts to establish what will be an

4  essential element at trial. *See id.* at 323.

5    The non-moving party is required to show that genuine issues of material fact

6  "'can be resolved only by a finder of fact because they may reasonably be resolved in

7  favor of either party.'" *California Architectural Building Prods., Inc. v. Franciscan*

8  *Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at

9  250) (emphasis in original). When the Court considers a motion for summary judgment,

10  "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to

11  be drawn in [their] favor." *Anderson,* at 255.

12    Yet the Court is not allowed to perform the jury's function – the Court may not

13  weigh evidence, draw legitimate inferences from facts, or decide credibility. *Id*. If the

14  moving party meets their initial burden, an adverse party may not rest upon the mere

15  allegations or denials of his pleading; his or her response, by affidavits or as otherwise

16  provided in FRCP 56, must set forth specific facts showing there is a genuine issue for

17  trial. FRCP 56(c). The Court may not disregard evidence solely based on its self-serving

18  nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015). "The district

19  court can disregard a self-serving declaration that states only conclusions and not facts

20  that would be admissible evidence." *Id.*

21

22

23

24

25

1          2.  <u>42 U.S.C. § 1983</u>

2          To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the

3    conduct complained of was committed by a person acting under color of state law, and

4    (b) the conduct deprived a person of a right, privilege, or immunity secured by the

5    Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535

6    (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section

7    1983 is the appropriate avenue to remedy an alleged wrong only if both of these

8    elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

9          Unless plaintiff makes a two-part showing, qualified immunity shields government

10   officials from liability. The plaintiff must show both: the official(s) violated a federal

11   statutory or constitutional right, and – at the time of the alleged act or failure to act there

12   was clearly established law that defined the contours of the federal right objectively

13   putting the official(s) on notice – i.e., every reasonable official would understand that

14   what they are doing is unlawful. *Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019);

15   *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018).

16         In this case, all of the defendants asserted qualified immunity in their Answer,

17   and two of the defendants asserted qualified immunity in their Summary Judgment

18   Motion. Dkt. 21 at 5; Dkt. 25 at 12-13.

19         When qualified immunity is reviewed in the context of a defense motion for

20   summary judgment, the evidence must be considered in the light most favorable to the

21   plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per

22   curiam). If there is a genuine issue of material fact concerning both -- (1) whether it

23   would be clear to a reasonable officer their conduct was unlawful under the

24

25

1  circumstances, and (2) whether the defendant's conduct violated a constitutional right --

2  then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City*

3  *of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

4         To determine whether there was clearly established law, the Court has stated,

5  "[w]hile there does not have to be a case directly on point, existing precedent must

6  place the lawfulness of the particular [action] beyond debate"; and the Court has also

7  observed, "there can be the rare obvious case, where the unlawfulness of the officer's

8  conduct is sufficiently clear even though existing precedent does not address similar

9  circumstances." *Wesby*, at 590. A clearly established right exists if "controlling authority

10 or a robust consensus of cases of persuasive authority" have held, on facts that are

11 close or analogous to the current case, that such a right exists. *Hines v. Youseff,* 914

12 F.3d 1218, 1229 (9th Cir. 2019).

13        In some contexts, general constitutional rules identified in previous court

14 decisions may apply with such obvious clarity to the specific conduct of a defendant,

15 that qualified immunity will not apply even though existing case law did not hold the

16 specific action in question unlawful. *United States v. Lanier,* 520 U.S. 259, 271 (1997);

17 *Bonivert,* 883 F.3d at 872-73. If qualified immunity operated as a shield for all conduct

18 not specifically addressed in existing case law at the time of the event in question,

19 officials would never be held accountable for unprecedented constitutional violations

20 that would appear obvious. *Hope v. Pelzer,* 536 U.S. 730, 740-42 (2002) (finding that a

21 correctional officer's act of handcuffing an inmate to a hitching post in a painful position

22 under dangerous and degrading circumstances was "antithetical to human dignity" and

23

24

25

so obviously wanton, painful and cruel under the Eighth Amendment that the officer had

fair notice that this was unlawful under existing legal precedent).

**B. Plaintiff Fails to Establish Personal Participation on the Part of Defendants Hilliard and Gilbert**

Plaintiff named Ms. Hilliard and Ms. Gilbert as defendants in this matter. Plaintiff

identifies Ms. Hilliard as SCCC's medical director in his complaint; however, she is a

health administrator. Dkt. 28, Declaration of Ms. Hilliard, ¶2. Ms. Gilbert was the

Superintendent at SCCC in 2016 and 2017. Dkt. 29, Declaration of Ms. Gilbert, ¶2.

To establish Section 1983 liability for damages, a plaintiff must show the

defendants, acting under color of state law, personally participated in the alleged

deprivation of federal constitutional or statutory rights. *Jones v. Williams*, 297 F.3d 930,

934 (9th Cir. 2002). More specifically, the plaintiff must allege the defendants, through

their own individual actions, violated those rights. *OSU Student Alliance v. Ray*, 699

F.3d 1053, 1069 (9th Cir. 2012).

Government officials, however, "may not be held liable for the unconstitutional

conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*,

566 U.S. 662, 676 (2009). Thus, "[b]ecause vicarious liability is inapplicable to" suits

brought pursuant to 42 U.S.C. § 1983, "a plaintiff must plead that each Government-

official defendant, through the official's own individual actions, has violation the

Constitution." *Id.* (emphasis added); *see also Peralta v. Dillard*, 744 F.3d 1076, 1085

(9th Cir. 2014) ("Supervisors aren't vicariously liable for constitutional violations under

section 1983. But they can be liable for their own conduct.") (internal citation omitted).

Plaintiff has not come forth with any evidence to show that either Ms. Hilliard or

Ms. Gilbert personally participated in depriving him of his constitutional right. The only

1  involvement Ms. Hilliard and Ms. Gilbert had was in addressing Plaintiff's grievance

2  after Plaintiff's medical treatment was complete. This conduct is insufficient to establish

3  a constitutional violation, *see Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)

4  (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (inmates lack a separate

5  constitutional entitlement to a specific grievance procedure), and is insufficient to show

6  their involvement in the alleged unconstitutional actions. The grievance response does

7  not demonstrate that either Ms. Hilliard or Ms. Gilbert were in any way involved in the

8  actual treatment of Plaintiff's chest pain. Nor were either Ms. Hilliard or Ms. Gilbert in

9  responsible for hiring or training medical staff at SCCC. Dkt. 28, Declaration of Ms.

10  Hilliard, ¶2; Dkt. 29, Declaration of Ms. Gilbert, ¶2.

11       Plaintiff failed to provide specific evidence to show that Ms. Hillard and Ms.

12  Gilbert participated in the alleged unconstitutional conduct; thus, both of these

13  defendants should be dismissed on that basis alone.

14       **C.  Defendants Hilliard and Gilbert Are Entitled to Qualified Immunity**

15       Defendants Hilliard and Gilbert are nonetheless entitled to qualified immunity.

16  Unless plaintiff makes a two-part showing, qualified immunity shields government

17  officials from liability. The plaintiff must show both: the official(s) violated a federal

18  statutory or constitutional right, and – at the time of the alleged act or failure to act there

19  was clearly established law that defined the contours of the federal right objectively

20  putting the official(s) on notice – i.e., any reasonable official in the defendant's shoes

21  would understand that what they are doing is unlawful. *City of Escondido v. Emmons,*

22  139 S.Ct. 500, 503 (2019); *District of Columbia v. Wesby,* 138 S.Ct. 577, 589 (2018).

23

24

25

1    Here, Plaintiff has failed to present sufficient evidence of a constitutional violation

2 by Ms. Hilliard or Ms. Gilbert. As discussed above, neither Defendant was personally

3 involved in Plaintiff's alleged injuries, other than reviewing and denying Plaintiff's Level

4 II grievance, which is alone insufficient to establish a constitutional violation. *See Evans*

5 *v. Skolnik*, 637 Fed. Appx. 285, 288 (9th Cir. 2015), *cert. dismissed*, 136 S. Ct. 2390

6 (2016). Thus, Ms. Hilliard and Ms. Gilbert are entitled to qualified immunity from

7 Plaintiff's §1983 claim.

8    **D. Plaintiff's Eighth Amendment Claim**

9    To state an Eighth Amendment claim relating to medical care, a plaintiff must

10 include factual allegations that a state actor acted, or failed to act, in a manner that

11 shows deliberate indifference to his serious medical needs. *Jett v. Penner*, 439 F.3d

12 1091, 1096 (9th Cir. 2006). A plaintiff alleging a claim of deliberate indifference must

13 prove two elements: the seriousness of the prisoner's medical need and the nature of

14 the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th

15 Cir. 1992). This includes "both an objective standard – that the deprivation was serious

16 enough to constitute cruel and unusual punishment – and a subjective standard –

17 deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

18    Deliberate indifference is shown by "a purposeful act or failure to respond to a

19 prisoner's pain or possible medical need, and harm caused by the indifference." *Jett*,

20 439 F.3d at 1096 (*citing McGuckin*, 974 F.2d at 1060). The defendants must have

21 known of and disregarded an excessive risk to the plaintiff's health. *Farmer v. Brennan*,

22 511 U.S. 825, 837 (1994). A difference of opinion about treatment between plaintiff and

23 prison medical authorities "does not give rise to a § 1983 claim," but it does not preclude

24

25

1   one, either. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981); *Hamby v.*

2   *Hammond*, 821 F.3d 1085, 1097 (9th Cir. 2016) (Gould, Judge, concurring in part and

3   dissenting in part).

4        The medical need must be serious in the constitutional sense, and the

5   indifference to medical needs must be substantial. Indications of a serious medical need

6   that falls within the Eighth Amendment protection include: if a plaintiff shows the

7   existence of an injury that a reasonable doctor or patient would find to be important and

8   worthy of comment or treatment; a medical condition that would significantly affect an

9   individual's daily activities; and a condition that creates chronic and substantial pain.

10  *Colwell v. Bannister,* 763 F.3d 1060, 1066-67 (9th Cir. 2014). Allegations that amount to

11  mere indifference, negligence, or medical malpractice will not support an Eighth

12  Amendment cause of action under § 1983. *Broughton v. Cutter Laboratories*, 622 F.2d

13  458, 460 (9th Cir. 1980) (*citing Estelle*, 429 U.S. at 105–06). "Medical malpractice does

14  not become a constitutional violation merely because the victim is a prisoner." *Estelle*,

15  429 U.S. at 106; *see also McGuckin*, 974 F.2d at 1050. Even gross negligence is

16  insufficient to establish deliberate indifference to serious medical needs. *See Wood v.*

17  *Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

18       If the prison's medical staff is not competent to examine, diagnose, and treat

19  inmates' medical problems, they must "refer prisoners to others who can." *Hoptowit v.*

20  *Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), *overruled on other grounds*, *Sandin v.*

21  *Conner*, 515 U.S. 472 (1995); *see also Ortiz v. City of Imperial*, 884 F.2d 1312, 1314

22  (9th Cir. 1989) (per curiam). A failure to competently treat a serious medical condition,

23  even if some treatment is prescribed, may constitute deliberate indifference in a

24

25

1    particular case. *Id.* And, "[d]eliberate indifference may be found where prison officials

2    fail to provide an inmate with medical care for reasons unrelated to the medical needs of

3    the prisoner, such as administrative concerns." *Oliver v. Carey*, 315 Fed. Appx. 649 (9th

4    Cir. 2009) (citing *Jett*, 439 F.3d at 1097) (In *Oliver*, the plaintiff alleged that defendant

5    doctors were deliberately indifferent when they denied his grievance appeal based on

6    an eight- to ten-month delay for orthopedic services, and because "the scheduling of

7    contract providers was beyond the authority of CSP staff.").

8        Here, Plaintiff alleges that Mr. Light was deliberately indifferent to Plaintiff's

9    serious medical need by failing to order additional diagnostic testing for his symptoms,

10    by failing to refer him to an outside medical professional and by prescribing Plaintiff

11    Metformin. Dkt. 14 at 8. But, the record shows that Mr. Light and SCCC medical staff

12    ordered labs and an electrocardiogram on October 7, 2016 after Plaintiff complained of

13    chest pain. Dkt. 27, Declaration of Mr. Light, ¶5.

14        Plaintiff was prescribed aspirin for his symptoms and was instructed to return to

15    the medical unit if his chest pain persisted. *Id.* When Plaintiff did return on October 11

16    due to continued chest pain, Mr. Light sent Plaintiff to the community hospital for further

17    evaluation. *Id.* at ¶6. It was there that Plaintiff was diagnosed with pulmonary embolism;

18    however, the medical professionals at the community hospital released Plaintiff on the

19    grounds that the pulmonary embolism was not life threatening .*Id.* at Exhibit C. Mr. Light

20    and the SCCC medical staff continued to monitor Plaintiff after he was discharged from

21    the hospital. *Id.* at ¶7.

22        The record further shows that once Plaintiff complained of the Metformin, Mr.

23    Light started him on an alternative medication, despite not believing that the Metformin

24

25

1   was causing any of Plaintiff's symptoms. *Id.* Plaintiff stated that after he stopped taking

2   the Metformin, he no longer experienced any discomfort. *See* Dkt. 28, Declaration of

3   Ms. Hilliard, ¶3.

4          At best, Plaintiff alleges that he disagrees with how he was medically treated for

5   his chest pain symptoms. However, Defendants have demonstrated that extensive

6   efforts were made to address his medical needs. Mere disagreement, without more,

7   between Plaintiff and SCCC medical staff over the course of treatment does not suffice

8   to succeed on a deliberate indifference claim. *See Toguchi v. Soon Hwang Chung,* 391

9   F.3d 1051, 1059–60 (9th Cir.2004).

10         Plaintiff has failed to show that Mr. Light (or any of the Jane and John Does, who

11  have not been identified by Plaintiff) violated his Eighth Amendment rights and thus,

12  Plaintiff's claims against him should be dismissed with prejudice because as a matter of

13  law, there are no genuine disputes of material fact on the merits of the Eighth

14  Amendment claim, and because all of the defendants are entitled to qualified immunity.

15      **E.  Plaintiff's Medical Negligence Claim**

16         In addition to his federal claim under 42 U.S.C. § 1983, Plaintiff asserts a medical

17  negligence claim against Defendants. Dkt. 14.

18         This Court has supplemental subject-matter jurisdiction over plaintiff's state-

19  law medical negligence claim because it is part of the "same case or controversy" as

20  plaintiff's federal section 1983 claims. See 28 U.S.C. § 1367(a). However, "in the usual

21  case in which all federal-law claims are eliminated before trial, the balance of factors to

22  be considered ... will point toward declining to exercise jurisdiction over the

23  remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7,

24

25

1  108 S.Ct. 614, 98 L.Ed.2d 720, (1988); *see* 28 U.S.C. § 1367(c). As discussed above,

2  the Court should dismiss plaintiff's claim of deliberate indifference under

3  the Eighth Amendment. Accordingly, the Court should decline to exercise jurisdiction

4  over the related state-law claims.

5      If the Court reaches the Plaintiff's medical-negligence claim, it should

6  nonetheless grant defendants' motion for summary judgment.

7      A claim of medical negligence under Washington law requires the plaintiff to

8  prove two elements: 1) defendant "failed to exercise that degree of care, skill, and

9  learning expected of a reasonably prudent health care provider" in defendant's position,

10  and 2) that failure proximately caused plaintiff's injury. RCW § 7.70.040; *Keck v. Collins*,

11  184 Wn.2d 358, 371, 357 P.3d 1080 (2015).

12      "[T]o defeat summary judgment in almost all medical negligence or medical

13  malpractice cases, the plaintiffs must produce competent medical expert testimony

14  establishing that the injury was proximately caused by a failure to comply with the

15  applicable standard of care." *Seybold v. Neu*, 105 Wn. App. 666, 676, 19 P.3d 1068

16  (2001). An expert must testify about "what a reasonable doctor would or would not have

17  done, that the [d]octor[ ] failed to act in that manner, and that this failure caused her

18  injuries." *Keck*, 184 Wn.2d at 371, 357 P.3d 1080. Nonetheless, expert testimony is not

19  necessary if the medical facts are observable to the lay person. *Bauer v. White*, 95 Wn.

20  App. 663, 667, 976 P.2d 664 (1999).

21      Plaintiff has failed to present evidence how Defendants rendered or failed to

22  provide medical care in a manner falling below a defined standard of care. Plaintiff's

23  medical negligence claim is premised on a theory that Mr. Light did not request

24

25

NOTED FOR APRIL 12, 2022 - 14

1    additional testing or refer Plaintiff to an outside doctor when he complained of chest

2    pain, and that Mr. Light did not respond when Plaintiff had symptoms allegedly caused

3    by Metformin. Contrary to Plaintiff's allegations, the record shows that Mr. Light did

4    order diagnostic testing throughout Plaintiff's treatment, sent Plaintiff to the community

5    hospital to address his continued chest pain, and prescribed Plaintiff alternative

6    medication when Plaintiff expressed concern about Metformin. Plaintiff fails to support

7    the theory that the unspecified treatment he purportedly should have received was

8    withheld because of a failure on the part of any defendant to adequately assess the

9    extent or immediacy of his medical needs.

10        Plaintiff does not contend that this is a rare case in which expert testimony is

11    unnecessary to establish the standard of care because the medical facts are observable

12    to the lay person. *See Guile v. Ballard Community Hosp.*, 70 Wn. App. 18, 25, 851 P.2d

13    689 (1993). The method with which Plaintiff's chest pain should have been treated with

14    measures beyond those provided by Plaintiff's medical providers is not a matter

15    observable to the lay person.

16        Accordingly, the Court should grant Defendants' motion for summary judgment

17    as to Plaintiff's medical negligence claim.

**III.    CONCLUSION**

19        The Court recommends GRANTING Defendants' unopposed motion for

20    summary judgment because the undisputed facts show there is no genuine issue of

21    material fact such that Defendants are entitled to judgment as a matter of law. Dkt. 25.

22

23

24

25

1     If the Court adopts the undersigned's Report and Recommendation, leave to

2  proceed *in forma pauperis* for purposes of appeal should be allowed. *Hooker v.*

3  *American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002); 28 U.S.C. § 1915(a)(3).

4     The parties have **fourteen (14) days** from service of this Report and

5  Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6;

6  FRCP 72(b). Failure to file objections will result in a waiver of those objections for

7  purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).

8     Accommodating this time limitation, this matter shall be set for consideration

9  on **April 13, 2022**, as noted in the caption.

10     Dated this 30th day of March, 2022.

11

12

13  Theresa L. Fricke
United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25